UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JODI HUGHES-RODRIGUEZ, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:19-cv-00359-HAB-SLC |
| CARAVAN FACILITIES MANAGEMENT, LLC, *et al.*, | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Before the Court is a motion to file a second amended complaint (ECF 43) filed by *pro se* Plaintiff seeking leave of Court to file her proposed second amended complaint and its attachments (ECF 43 at 3-39), in order to add to and clarify her claims against Defendant Local 2209 United Auto Workers ("UAW"). UAW has filed a response to the motion on May 28, 2020. (ECF 45). Plaintiff, however, has not filed a reply and her time to do so has now passed. N.D. Ind. L.R. 7-1(d). For the following reasons, Plaintiff's motion (ECF 43) is denied without prejudice.

*A. Background*

As the Court has already explained at length in its previous Order on Plaintiff's first motion to file an amended complaint (*see* ECF 25 at 1-2), Plaintiff initiated this matter against Defendant Caravan Facilities Management, LLC ("Caravan"), on July 17, 2019, alleging breach of contract, wrongful discharge, and violations of the Family Medical Leave Act ("FMLA"). (ECF 2). On December 16, 2019, Plaintiff moved for leave to amend her complaint to assert a breach of the duty of representation claim against UAW. (ECF 20). On January 31, 2020, the

Court granted Plaintiff's motion (ECF 20) in part, allowing her claim against UAW to go forward. (ECF 25).

On April 17, 2020, UAW filed a motion for judgment on the pleadings, which remains pending. (ECF 38). In its accompanying brief, UAW contends that Plaintiff failed to state a claim of fair representation against it, and to the extent that she did, Plaintiff's claims are untimely. (ECF 39 at 1). On May 11, 2020, Plaintiff filed a response in which she attempted to clarify not only her fair representation claim against UAW, but also add a new supposed instance in which UAW breached its duty of fair representation; she further asserts that she was bringing FMLA and retaliation claims against UAW as well. (ECF 42). On May 14, 2020, Plaintiff filed the present motion to file a second amended complaint. (ECF 43). Four days later on May 18, 2020, UAW filed a reply to the motion for judgment on the pleadings asserting that: (1) to the extent that Plaintiff was attempting to supplement her amended complaint in her response, it was improper; (2) Plaintiff's fair representation claims are untimely and fail to state a claim for which relief may be granted; and (3) Plaintiff's FMLA claims as to UAW are improper. (ECF 44).

In her first amended complaint, Plaintiff alleges that she "tried, on all disciplinary actions to pursue union representation in order to initiate a grievance, however, the union failed to pursue [her] grievances." (ECF 26 at 4). She further alleged that "[UAW] breach[ed] its duty of fair representation when they failed and interfered with the grievance process," and that "[UAW] and [C]aravan maliciously retaliatory [*sic*] discharge[d] [her]." (*Id.* at 7).

In her proposed second amended complaint, Plaintiff expands on these claims, first asserting that "[UAW] through **Brian Hartman (former UAW local 2209 president)** and Caravan through **David Tinsley (onsite manager for [C]aravan)** conspired to breach the Union Constitution when they negotiated an agreement in relation to **"On-Call"** employees . . . ."

2

(ECF 43 at 7 (emphasis in original)).  She next reiterates that "[UAW] breached its duty of fairly representing [her] when they interfered and failed to pursue a grievance in relation to disciplining "on-call" employees for tardiness."  (*Id.*).  She then asserts that both UAW and Caravan "committed a violation under the [FMLA] and Retaliation [*sic*] when [she] was disciplined and discharged while on FMLA leave."  (*Id.*).  Similarly, she asserts that both "wrongfully discharged [her] when two of the disciplinary action[s against her] were based on incident reports that were not authorized under the collective bargaining agreement."  (*Id.* at 8).  Finally, she asserts that "David Tinley denied [her] grievance in violation of the . . . collective bargaining agreement," and  that "[UAW again] Breached [*sic*] its duty of fairly representing [her] when they interfered and failed to pursue a grievance in relation to [her termination.]"  (*Id.*).

In its response to the present motion to amend, UAW contends that the motion should be denied because it was filed past Plaintiff's deadline to seek leave to amend her pleadings.  (ECF 45 at 8-10; *see* ECF 15 (setting November 26, 2019, as the deadline for Plaintiff to seek leave to amend her pleadings and join additional parties)).  In the alternative, UAW contends that Plaintiff's motion should be denied because such an amendment, at least as to her fair representation claims, would be futile as they are time barred.  (ECF 45 at 10-12).  Similarly, it asserts that Plaintiff's claim of conspiracy to breach the UAW constitution should be denied as futile as it fails to state a claim upon which relief may be granted.  (*Id.* at 12-13).  Next, it argues that Plaintiff's FMLA, retaliation, and wrongful discharge claims are also futile because it was not Plaintiff's employer.  (*Id.* at 13-16).  Finally, UAW asserts that it would suffer undue prejudice if Plaintiff were allowed to amend her complaint.  (*Id.* at 16-17).

*C. Legal Standard*

Pursuant to Federal Rule of Civil Procedure 16, the Court must issue a scheduling order limiting the time "to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When a motion to amend is filed after the Rule 16 deadline to do so has passed, the Court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted) (upholding a denial of a motion for leave to amend nine months after the deadline to amend had passed).

Pursuant to Federal Rule of Civil Procedure 15, when a party can no longer amend the pleadings as a matter of right, a party must seek the Court's leave or the written consent of the opposing party. While "[t]he [C]ourt should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "the decision as to whether to grant a motion to amend a complaint is entrusted to the sound discretion of the trial court," *Cohen v. Ill. Inst. of Tech.*, 581 F.2d 658, 661 (7th Cir. 1978) (collecting cases). Further, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citing *Villa v. City of Chi.*, 924 F.2d 629, 632 (7th Cir. 1991)). "While delay in itself does not constitute a sufficient basis for denying a motion to amend, the longer the delay, the greater

the presumption against granting leave to amend." *Id.* (citation and internal quotation marks omitted).

Further, an amendment is futile if it would not survive a dispositive motion such as a motion to dismiss or a motion for summary judgment. *See King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007) ("An amendment is futile if the amended complaint would not survive a motion for summary judgment."); *see also Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989) ("An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment."); *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008) ("For the plaintiffs, futility is measured by the capacity of the amendment to survive a motion to dismiss." (citing *Crestview Vill. Apts. v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 n.3 (7th Cir. 2004) (collecting cases))). "In the interests of judicial economy, the district court should 'scrutinize the amended complaint' and 'determine its viability' to decide 'whether filing it would be an exercise in futility.'" *Schible v. United States*, No. 1:12-CV-59, 2012 WL 2407695, at *1 (N.D. Ind. June 25, 2012) (quoting *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008)).

*D. Analysis*

1. Rule 16 Analysis

As an initial matter, Plaintiff's alleged delay in bringing her motion, alone, does not necessitate denial. First, as the Court noted in its prior Order granting Plaintiff's request to file her first amended complaint, the deadline to seek the Court's leave had already passed. (ECF 25 at 5). While Plaintiff did not provide much in regard to why she was seeking the Court's leave now, she did state that she was filing her motion having "received new documents from [UAW,]

. . . the answer in response to the amended complaint" and other "evidence of new facts." (ECF 43 at 1-2). By way of further background, while a summons was issued as to UAW on January 31, 2020 (ECF 27), UAW did not file an answer to the amended complaint until March 20, 2020 (ECF 33), and did not respond to Plaintiff's request for production of documents (ECF 37) until May 1, 2020 (ECF 40), thirteen days before she filed her motion for leave to file her second amended complaint (ECF 45).

UAW correctly notes that Plaintiff "neither identifies what the facts/evidence is/are nor explains why the new facts and evidence demonstrate that she could not have previously filed her motion." (ECF 45 at 9-10). While it is Plaintiff's burden is to establish "good cause" under Rule 16, *see Alioto*, 651 F.3d at 720, the Court is cognizant of its responsibility to construe *pro se* pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Given the short time between UAW's discovery responses and Plaintiff's filing of the motion for leave to file a second amended complaint, Plaintiff has satisfied Rule 16's good cause standard. Accordingly, the Court will now turn to UAW's Rule 15 arguments.

2.  Rule 15 Analysis

As mentioned, UAW first raises futility arguments as to Plaintiff's claims that it breached its duty of fair representation towards her. Plaintiff raises two "'Hybrid' Section 301 of the National Labor Relation Act" claims against UAW in her second amended complaint—one for interfering and failing "to pursue a grievance in relation to disciplining of 'on-call' employees for tardiness" and one for interfering and failing "to pursue a grievance in relation to [Plaintiff's] termination." (ECF 43 at 7-8). Presumably, though, Plaintiff is referring to so-called "hybrid claims" pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

§ 15.  UAW contends that each of these claims are barred by the applicable statute of limitations. (ECF 45 at 10-12).

"Section 301 of the [LMRA] permits a union employee to sue his employer for the violation of collective bargaining agreements."  *Flores v. Levy Co.*, 757 F.2d 806, 808 (7th Cir. 1985).  A claim is a so-called hybrid claim when the plaintiff sues both her union for breaching its duty of fair representation and her employer for breaching the collective bargaining agreement.  *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009).  "[W]here the union and the employer have agreed to submit disputes to a grievance-arbitration process, the employee must first show that the union has breached its duty of fair representation."  *Flores*, 757 F.2d at 808.  "A union breaches its duty of fair representation only where its actions in pursuing a member's grievance are 'arbitrary, discriminatory, or in bad faith.'"  *Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 892 (7th Cir. 2010) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).  "The idea behind § 301 is that a union member should have judicial recourse if, during the arbitration process, his union completely bungles (or intentionally sabotages) an otherwise meritorious grievance."  *Id.*  at 891-92.

While the LMRA does not contain an express statute of limitations, "[t]he Supreme Court held that the six-month period in section 10(b) of the [National Labor Relations Act] should apply to both the union and the employer.  *Flores*, 757 F.2d at 808 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)); *see also* 29 U.S.C. § 160(b) (establishing a six-month limitations period for bringing a charge of unfair labor practices to the National Labor Relations Board).  Further, "a Section 301 'cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on

7

[her] grievance.'"  *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir. 1999) (quoting *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986)).

As to Plaintiff's fair representation claim regarding disciplining "on-call" employees, each of the alleged acts complained of would have occurred between 2014 and 2018.  (*See* ECF 43 at 4-5 ("From December 13, 2014 to and including February 22, 2018 multiple disciplinary actions . . . were initiated [against Plaintiff] in reference to [her] Tardiness [*sic*] . . . . [A]fter the disciplining on each aforementioned action, [UAW] representative(s) failed to assist and/or pursue any grievances on [her] behalf.")).  Further Plaintiff was aware as early as 2014 that these disciplinary actions potentially violated the collective bargaining agreement.  In the "EMPLOYEE STATEMENT" section of her various employee warning notices, Plaintiff wrote as much.  (*See* ECF 43 at 17 (writing on December 13, 2014, in response to a disciplinary action for tardiness, "I have spoke to union rep and he explained to me that I am an on call employee and the tardies where not applicable to on calls just full time employees . . . . . Request a grievance meeting with my union rep!!"), 18 (writing on May 24, 2015, regarding another "cause" disciplinary action for alleged tardiness "Not in UAW Book anything about Just cause!!! Need Grievance taken care of been since 12/9/14"), 20 (writing on March 28, 2016, "Attendance is Not Disciplinary or Tardy"), 22 (writing on December 11, 2017 ("Never received Coach and Council on the 11/7/2017 Cause.  This should be a C&C.")).

Accordingly, there is nothing to suggest that Plaintiff should not have known, and in fact did not know, "that no further action would be taken on [her] grievance" more than six months prior to when she filed her initial complaint in this matter.  *Chapple*, 178 F.3d at 505.  Presumably, Plaintiff may argue that the statute of limitations should be equitably tolled, as she

8

was unable to obtain proof that UAW was in fact "interfering" with her grievance process. "[T]he tolling inquiry," however "asks only whether the plaintiff was unable to learn of the possibility of [her] claim within the limitations period; it does not ask whether the plaintiff was unable to obtain solid proof." *Id.* at 506 (citing *Hentosh v. Herman M. Finch Univ. of Health Sci.*, 167 F.3d 1170, 1175 (7th Cir. 1999)).

Plaintiff's fair representation claim regarding her termination, however, requires greater discussion.  Per Plaintiff's proposed second amended complaint, Plaintiff was terminated on March 12, 2019, and initiated a grievance on March 15, 2019, which was denied by David Tinsley on March 19, 2019.  Plaintiff's termination and grievance falls within six months of when she filed her initial complaint, but outside of six months from when she filed her second amended complaint adding UAW as a party.

As UAW points out, Plaintiff does not explicitly argue that her proposed second amended complaint should relate back to her initial complaint.  (ECF 45 at 12 n.1).  Nor did she explicitly allege that her first amended complaint related back to her initial complaint.  (*See* ECF 20; ECF 20-1).  This weighs against Plaintiff as "it is the plaintiff's burden to demonstrate that an amendment relates back to a timely-filed complaint." *Irvin v. City of Chi.*, No. 07 C 1207, 2007 WL 3037051, at *4 (N.D. Ill. Oct.15, 2007) (citing *Farrell v. McDonough*, 966 F.2d 279, 282-83 (7th Cir. 1992)).  Plaintiff, however, would likely be unable to show that the proposed amended complaint would relate back to the initial complaint, even on the merits.

In the relevant part, Federal Rule of Civil Procedure 15(c)(1)(C) provides that:

> [A]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if [the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading] and if . . . the party to be brought in by amendment:

9

>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"[T]he plaintiff must show that the amended complaint 'relates back' to the initial complaint, as if the new party had been in the case all along." *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 975 (W.D. Wis. 2003) (citing *Worthington v. Wilson,* 8 F.3d 1253 (7th Cir. 1993)). "This suggests that serving an additional party with a complaint commences a new 'proceeding,' even if the new claim is part of a lawsuit that was filed previously; otherwise, there would be no statute of limitations problem because the date of the original filing would always control." *Id.* at 975-76. "When a party attempts to add a new party to a lawsuit, Rule 15(c)(1) governs relation back, and requires that a mistake was made regarding the proper party to name." *McKinney v. Office of Sheriff of Whitley Cty.*, No. 1:15CV79, 2018 WL 2296750, at *3 (N.D. Ind. May 21, 2018), *reconsideration denied*, 2018 WL 3434710 (N.D. Ind. July 17, 2018). Factors to consider include whether "(1) the new plaintiff's claim arose out of the 'same conduct, transaction or occurrence' set forth in the original complaint; (2) the new plaintiff shares an 'identity of interest' with the original plaintiff; (3) the defendants have 'fair notice' of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice." *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 232 (N.D. Ill. 2002).

Here, there is nothing to suggest that UAW was not named in the initial complaint because of a mistake on the part of Plaintiff. Rather, Plaintiff claimed in her motion seeking leave to file her first amended complaint that her motion was prompted by "evidence of new facts and will include new defendants." (ECF 20 ¶ 3). While the claim against UAW arguably arose out of the same transaction or occurrence as the claim against Caravan—Plaintiff's

termination—there is nothing to suggest that the two Defendants share an identity of interest. UAW and Caravan are obviously separate entities, and there is nothing to suggest that UAW received notice of Plaintiff's claims against Caravan. *Cf. Staren v. Am. Nat'l Bank & Tr. Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976) ("[T]he substituted corporate plaintiff had such an identity of interest with the individual plaintiffs that the original complaint served to notify defendant American of the actual claim being asserted against it, with no resulting prejudice to its interests."); *see also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known . . . not what the *plaintiff* knew or should have known at the time of filing her original complaint.").

Plaintiff's FMLA/retaliation claim[1] is similarly futile. "As to the violation of the FMLA, the Plaintiff's claim fails because the FMLA only imposes liability on the *employer*." *Malone v. Securitas Sec. Servs.*, No. 13 C 8747, 2015 WL 5177549, at *3 (N.D. Ill. Sept. 3, 2015), *aff'd sub nom.*, 669 F. App'x 788 (7th Cir. 2016). In other words, "FMLA regulations do not extend to unions unless the union was the plaintiff's employer." *Id.* (collecting cases).

Similarly, Plaintiff's claims that "Caravan and [UAW] wrongfully discharged [her] . . . . when they failed to follow the collective bargaining agreement discipline program" are futile because UAW cannot be held liable for the discharge. (ECF 43 at 8). A wrongful discharge claim is essentially a contract claim in the sense that the Court must determine whether an

---

[1] As Plaintiff titled her claim "FMLA/Retaliation," and specifically refers to her termination while she was on FMLA leave, the Court interprets her claim as being a retaliation claim under the FMLA despite not being explicitly titled as such. (ECF 43 at 7); *see also Goelzer v. Sheboygan Cty. Wis.*, 604 F.3d 987, 992 (7th Cir. 2010) ("In addition, the FMLA affords protection to employees who are retaliated against because they exercise rights protected by the Act. *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008). Pursuant to 29 U.S.C. § 2615(a)(2), it is 'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.' The Act also makes it unlawful to 'discharge' or 'discriminate' against a person for taking part in proceedings or inquiries under the FMLA. 29 U.S.C. § 2615(b). We have construed these provisions as stating a cause of action for retaliation. *See, e.g.*, *Lewis*, 523 F.3d at 741; *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).").

employee's discharge was consistent with a collective bargaining agreement. *See Vaca v. Sipes*, 386 U.S. 171, 185 (1967) ("The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures."). "The union," however, "is on the employee's side of a labor contract." *Hardesty v. Essex Grp., Inc.*, 550 F. Supp. 752, 766 (N.D. Ind. 1982). Further, it "cannot discharge, so it cannot promise that discharges will only be for 'just cause.'" *Id.*

Ultimately, to the extent that Plaintiff is attempting to assert a wrongful discharge claim against UAW, her claim is really a § 301 claim. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976) ("Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge. Petitioners' present suit against the employer was for wrongful discharge and is the kind of case Congress provided for in § 301." (internal citation omitted)). Thus, Plaintiff's claim would be barred by the applicable statute of limitations for the same reasons as discussed *supra.*

As to Plaintiff's final new claim—conspiracy to breach the UAW constitution—it too is insufficient. UAW contends that because its constitution is an independent contract running between itself and individual union members, the Court does not have jurisdiction over the claim under § 301. (ECF 45 at 13 (citing *Distler v. United Mine Workers*, 711 F.2d 76 (7th Cir. 1983)). The Supreme Court, however, has found to the contrary, at least as to *international* union constitutions. *See Wooddell v. Int'l Bhd of Elec. Workers, Local 71*, 502 U.S. 93, 99 (1991) ("Since union constitutions were at the time of enactment of Taft-Hartley (and remain)

probably the most commonplace form of contract between labor organizations, we concluded that Congress would not likely have used the unqualified term 'contract' without intending to encompass union constitutions."); *see also Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996) ("Union constitutions have been held to be contracts within the scope of section 301 and members of the union held entitled to sue to enforce the contract-constitution as third-party beneficiaries. . . . But in each of these cases it was the constitution of an *international* union that was at issue, and an international union is plausibly conceived of as a contractual union of its locals. . . . The constitution of a local union, in contrast, is a contract between the union and its members." (internal citations omitted)). That being said, it is not clear how or if the Court has jurisdiction over the claim.

Plaintiff does not clarify which constitution, if there are separate UAW constitutions, she is referring to.[2] If she is attempting to assert a claim stemming from a conspiracy to breach an international constitution, the Court may have federal question jurisdiction pursuant to § 301. *See Vaca*, 386 U.S. at 177 ("It is obvious that [the] complaint alleged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs his cause of action."). However, if that is the case, the claim may also be barred by the statute of limitations. *See Young-Smith v. Bayer Health Care, LLC*, No. 3:07cv629, 2008 WL 2444554, at *7 (N.D. Ind. June 13, 2008) ("Since Young-Smith's conspiracy claim is governed by § 301, it is barred by the six-month statute of limitations.").

If Plaintiff is seeking to proceed with a state-law contract claim, the Court may have diversity or supplemental jurisdiction over the claim. *See* 28 U.S.C §§ 1332, 1367. The proposed second amended complaint, however, makes no reference to either, nor does it mention

---

[2] Plaintiff asserts that she attached a copy of the relevant language as "Exhibit J," but no such exhibit was filed with the Court. (ECF 43 at 7).

the requisite amount-in-controversy to satisfy diversity jurisdiction. *See* Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support . . . ."). If Plaintiff intends to invoke the Court's diversity jurisdiction, she bears the burden of demonstrating that the requirement of complete diversity has been met. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 613 (7th Cir. 2012). Accordingly, the Court cannot say for sure whether Plaintiff's new claim complies with the Federal Rules.

As mentioned, "the decision as to whether to grant a motion to amend a complaint is entrusted to the sound discretion of the trial court." *Cohen*, 581 F.2d at 661. Here, as it is currently written, Plaintiff's second amended complaint suffers from clear infirmities. As such, allowing the second amended complaint to proceed as written would not serve the interests of judicial economy. However, given Plaintiff's *pro se* status, and because leave should be granted when justice so requires, the Court will afford Plaintiff the opportunity to attempt to cure these defects. As already noted, though, repeated failure to cure defects could provide another ground for denying future motions. Because the Court finds that Plaintiff's motion (ECF 43) should be denied on the grounds discussed above, it sees no need to reach UAW's undue hardship arguments (*see* ECF 45 at 16-17).[3]

---

[3] While not considered in this Court's decision, Plaintiff's motion and proposed second amended complaint were mistakenly filed as a single document. (*See* ECF 43). If Plaintiff chooses to try again to seek the Court's leave, she is reminded that, consistent with this Court's Local Rules, she should file her proposed amended complaint as an attachment to her motion. *See* N.D. Ind. L.R. 15-1.

*E. Conclusion*

In conclusion, Plaintiff's motion seeking leave to file a second amended complaint (ECF 43) is DENIED WITHOUT PREJUDICE. Plaintiff is afforded to and including August 12, 2020, to file a new motion seeking the Court's leave.

SO ORDERED.

Entered this 28th day of July.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge