UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JODI HUGHES-RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-CV-00359-HAB-SLC |
| | ) |
| CARAVAN FACILITIES | ) |
| MANAGEMENT, LLC, *et al.,* | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

After she allegedly sent vulgar and threatening text messages to her supervisor, Caravan Facilities Management, LLC ("Caravan"), terminated Plaintiff, Jodi Hughes-Rodriguez, from her employment. Hughes-Rodriguez, proceeding *pro se*, filed suit against Caravan asserting claims for breach of the union contract, wrongful discharge, and violations of the Family Medical Leave Act ("FMLA"). (ECF No. 2).[1] She subsequently filed an Amended Complaint adding a claim against her union for breach of the union's duty to provide fair representation. (ECF No. 26).[2]

Presently before the Court is Caravan's Motion for Summary Judgment. (ECF No. 58). Hughes-Rodriguez filed her Objection to the Defendant's Motion for Summary Judgment on

---

[1] Plaintiff filed her original complaint in state court, but Caravan removed it to this Court. (ECF No. 1).

[2] This Court granted the union's motion for judgment on the pleadings on September 1, 2020. (ECF No. 50). Plaintiff's Amended Complaint asserted unfair representation claims dating back to conduct from 2014-2017 as well as relating to her discipline and termination in March 2019. The Court concluded that Plaintiff's Amended Complaint failed to plead facts giving rise to an inference that the union acted arbitrarily, in a discriminatory fashion, or in bad faith and, even if she had, her claims were time-barred by the six month statute of limitations for such claims. With respect to timeliness, this Court's decision, in part, relied upon the decision of Magistrate Judge Collins who denied Plaintiff's request to file a second Amended Complaint without prejudice. (ECF No. 46). In that Opinion and Order, the Magistrate Judge determined that Plaintiff's proposed amended claims against the union relating to her termination did not relate back to the filing of her original complaint, thereby making them untimely.

March 18, 2021. The time for a reply has passed with none filed. For the following reasons, Caravan's motion will be GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## FACTUAL BACKGROUND

    *a. Hughes-Rodriguez's Submissions in Opposition*

As this Court requires by N.D. Ind. L.R. 56-1(f), Caravan issued a Notice of Summary Judgment Motion to Hughes-Rodriguez on January 21, 2021, along with a copy of its Motion for Summary Judgment. This Notice provided Hughes-Rodriguez with the applicable federal rule of civil procedure related to summary judgment, Fed. R. Civ. P. 56, along with a copy of this Court's N.D. Ind. L. R. 56.1, which sets forth the obligations of the party opposing summary judgment. Hughes-Rodriguez filed her objection to the Motion for Summary Judgment, but the submission is largely unresponsive to Caravan's motion, contains new and unsupported assertions, and otherwise fails to comply with the requirements of either the federal rule or this Court's local rules. The unsworn filing does not include a section labeled "Statement of Genuine Disputes" that identifies the material facts that Hughes-Rodriguez contends are genuinely disputed nor does it contain any evidentiary submissions.[3] Because Hughes-Rodriguez has failed to properly support any facts in opposition or address, with citations to relevant portions of the record, the facts set forth by Caravan in its motion, the Court, pursuant to Fed. R. Civ. P. 56(e)(2) considers the facts set forth by Caravan undisputed. The relevant facts are as follows:

  b. *Hughes-Rodriguez's Employment with Caravan*

---

[3] Hughes-Rodriguez's objection to summary judgment references "newly discovered evidence" which she asserts demonstrate "blatant Title VII violations of racial and gender discrimination" by Caravan and the union. (ECF No. 66 at ¶ 3). Neither Plaintiff's original or amended complaints contain any discrimination claims under Title VII. Nor does it appear that she exhausted her administrative remedies by filing a charge of discrimination with the EEOC within 300 days of her March 9, 2019, termination so as to be able to properly assert such claims here. In a previous filing after the close of discovery and after Caravan filed its motion for summary judgment, Hughes-Rodriguez asked this Court to extend her response deadline to the motion for summary judgment while she made contact with the EEOC in Indianapolis to amend her EEOC charge, presumptively due to this newly-discovered evidence. This Court denied that motion as this case had proceeded beyond discovery to the dispositive motion stage and, more importantly, Plaintiff had not asserted Title VII claims in the present lawsuit.

Hughes-Rodriguez's objection also takes issue with the actions of the union, claiming that she never received a four-step grievance procedure because the union breached its duty to represent her. However, the union has already been dismissed from this action and those arguments could have been made in response to the Motion for Judgment on the Pleadings. They are irrelevant to the present motion.

Hughes-Rodriguez began her employment at Caravan on April 8, 2014. (Aff. of Chandra Hawkins, ECF No. 60, ¶3). Once hired, Hughes-Rodriguez was advised, and signed, an acknowledgement form confirming, that her employment was subject to the terms of a Collective Bargaining Agreement (hereinafter "CBA") between Caravan and the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("UAW") dated March 18, 2013. (*Id*. at ¶ 4 and Ex. A). The CBA contained a set of rules known as "shop rules" that applied to all employees. (*Id.* at ¶ 5 and Ex. B at pp. 50–52). Hughes-Rodriguez was provided a copy of the shop rules and signed an acknowledgement form reflecting her receipt of them. (*Id.* at ¶ 6 and Ex. C).

Shop rules are divided into two categories, major and minor, based on the severity of the conduct and rule violation. Violations of major shop rules yield a penalty up to and including termination. Minor rule violations are subject to the progressive disciplinary procedure in the CBA.

On March 6, 2019, Hughes-Rodriguez received a thirty-day suspension under the CBA's progressive discipline policy for violations of shop rules 21 (wasting time and loitering during working hours) and 34 (being out of her work area), both minor rule violations. (Hawkins Aff. ¶ 7 and Ex. D–Employee Warning Notice). The Employee Warning Notice contains a supervisor statement of the specific conduct forming the basis for the discipline. The statement reads:

> Jodi, on March 6, 2019 you and Amanda were riding in Amanda's cart at 4:00 a.m. Amanda's trash hadn't been done, and your cart was nowhere in sight. In addition to that, we had several complaints from other employees that you were seen throughout the night just riding all over the place. When you were seen at 4 a.m. by the roller you claimed you were going to help Amanda do her trash. You were told there was no need to help Amanda do trash. At that moment you were put on notice. When asked why you were out of your work area and not performing your own assignment, you said "I'm done with my work." However, upon inspecting your area, your assignments were not completed. You are therefore in violation of the above-cited shop rules.

(Ex. D)(all sic). This was Hughes-Rodriguez's fourth discipline for minor violations under the progressive discipline provisions of the CBA.[4] In her unsworn objection, Hughes-Rodriguez states that her discipline for "riding on a cart" and not getting her work done is false. (ECF No. 66 at 2, ¶ 4).

On March 9, 2019, after learning of this suspension (the warning notice was mailed to her), Hughes-Rodriguez sent vulgar, abusive and threatening text messages to her supervisor, Kelly Hyndman (Hyndman). Hyndman, in turn, reported the text messages to Caravan and the messages were retrieved from Hyndman's company owned cellular phone. Caravan has submitted those messages in support of its motion and it is a fair representation to say that they contain a number of expletives and abusive language evidencing Hughes-Rodriguez's displeasure with the disciplinary action taken against her. Additionally, Hughes-Rodriguez threatens to "file paper work" on Hyndman and "Jay." (Hawkins Aff. ¶8 and Ex. E).

On March 12, 2019, Caravan, having deemed these messages to be a major violation under shop rule 2 (assaulting, fighting, threatening, intimidating, coercing or interfering with employees or supervisor) and a minor violation under shop rule 29 (abusive language to any employee or supervisor), immediately terminated Hughes-Rodriguez's employment.[5]

Caravan's decision to terminate Hughes-Rodriguez was solely based upon her conduct in sending the vulgar, abusive, intimidating and threatening text messages to Hyndman. (Hawkins

---

[4] Hughes-Rodriguez had previously received three disciplinary actions for tardiness and other attendance related violations.

[5] Hawkins states in her affidavit that Hughes-Rodriguez grieved her termination, the grievance was denied and not appealed. (Hawkins Aff., ¶ 10). However, this is not supported by the documents cited to by Hawkins and submitted in ECF No. 62-1, Exhibit H. Those documents appear to relate to discipline that Hughes-Rodriguez received from 2014-2016. This Court has no evidence regarding any grievance filed in relation to Hughes-Rodriguez's March 2019 discipline or termination.

Aff. at ¶16). Hughes-Rodriguez does not deny having sent the messages nor does she set forth any dispute of fact that, having sent them, they fall under shop rules 2 or 29.

### c. FMLA Leave

On June 25, 2018, Caravan approved a request from Hughes-Rodriguez for intermittent FMLA leave to care for her daughter. Under the terms of that approval, Hughes-Rodriguez was authorized to take leave "for up to 1 time per month with up to 1 day per episode." (Supp. Hawkins Aff. ¶ 11 and Ex. G). No disciplinary actions were taken against Hughes-Rodriguez for taking the approved leave to care for her daughter.

On February 19, 2019, Hughes-Rodriguez submitted a new request for intermittent FMLA leave to care for her father. Paperwork supporting the request and documentation from Hughes-Rodriguez's father's treating physician was received by Caravan on March 11, 2019. However, two days earlier, on March 9, 2019, Hughes-Rodriguez was terminated from her employment with Caravan. Absent her termination, Caravan states that her request for FMLA leave would have been granted. (Hawkins Aff. ¶15).

## DISCUSSION

Hughes-Rodriguez brings three claims against Caravan: breach of the CBA, FMLA retaliation, and wrongful discharge. For the reasons that follow, she has not raised a genuine issue of material fact as to any of them and thus, summary judgment in favor of Caravan is warranted.

### A. Breach of the CBA, §301 of the LMRA

This Court has previously identified the assertions in Plaintiff's Amended Complaint to be "hybrid" claims under Section 301 of the Labor Management Relation Act, ("LMRA"), 29 U.S.C. § 185, *et seq*. (*See* Opinion and Order, ECF No. 50 at 4; Magistrate Judge Opinion and Order, ECF No. 46). A "hybrid" Section 301 claim is one in which a plaintiff alleges both that her union

breached its duty of fair representation and that her employer breached the relevant labor contract. *Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 853 (7th Cir. 2016). The two claims remain interdependent upon each other, so if "one claim fails, 'neither claim is viable.'" *Id.* (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997)).

In ruling on the motion for judgment on the pleadings filed by the union, this Court concluded that the Amended Complaint failed to state a claim against the union as a matter of law and dismissed the union from this suit. (ECF No. 50). Because the Plaintiff's claim against Caravan for violating the CBA is interrelated with her claim against the union, the latter claim having been dismissed, her claims against Caravan for breach of the CBA must meet the same fate and summary judgment is proper.

However, even if the union remained in the case, the § 301 claim relating to her termination would still fail as a matter of law now. Hughes-Rodriguez has not produced any evidence in response to summary judgment raising a genuine issue of material fact that Caravan violated the terms of the CBA. When the employee's underlying claim lacks merit as a matter of law, there can be no liability against either the employer or the union. *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1304 (7th Cir. 1992). "Indeed, an employee suffers no injury when the union fails to process a meritless grievance." *Id.*; *United Steelworkers of America v. NLRB,* 692 F.2d 1052, 1058 (7th Cir.1982) ("[s]ince there was no finding that the grievance had merit, it cannot be said that the Union caused any damage....").

The unrefuted evidence before the Court is that Hughes-Rodriguez violated minor shop rules on multiple occasions and, at each turn, Caravan disciplined her under the progressive discipline policy. Further, once Hughes-Rodriguez violated a major shop rule, Caravan utilized its ability under the CBA to terminate her employment. Hughes-Rodriguez does not deny sending the

7

text messages that resulted in her termination nor does she dispute anywhere that the nature of those text messages warranted her termination. Thus, even though she had the opportunity to complete discovery and submit evidence to counter summary judgment, there is simply nothing she presents from which this Court could conclude that Hughes-Rodriguez claim under §301 relating to her March 2019 discipline and termination had merit. Summary judgment is, therefore, GRANTED.

### B. FMLA Retaliation

Next, Hughes-Rodriguez claims that she was disciplined and terminated in retaliation for her exercise of her FMLA rights. To establish FMLA retaliation, an employee must demonstrate she was engaged in a protected activity, the employer took an adverse employment action against her, and there was a connection between her protected activity and the adverse employment action. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) (citing *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015)).

Evidence supporting a claim of retaliatory discharge under the FMLA includes suspicious timing, evidence that similarly situated employees were treated differently, and evidence that the employer offered a pretextual reason for the discharge. *Larson v. Motor Werks of Barrington, Inc.*, No. 15 C 5572, 2018 WL 287747, at *8 (N.D. Ill. Jan. 4, 2018). Suspicious timing alone rarely is enough to overcome summary judgment. *Curtis*, 807 F.3d at 221. Summary judgment for the employer is proper where the employer provides undisputed evidence that the adverse employment action is based upon the employee's misconduct. *Id.*

Caravan concedes that Hughes-Rodriguez engaged in protected activity and that it took adverse action against her. However, it argues that there is simply no evidence connecting Hughes-Rodriguez's discipline or termination to her protected activity. Indeed, the unrebutted record

presented is that Hughes-Rodriguez was terminated for her misconduct in violating a major shop rule. Caravan also points out the fact that it complied with the discipline policy contained in the CBA in the discipline and termination of Hughes-Rodriguez. This, it argues, adds credibility to its decision to terminate her and demonstrates that it had no insidious motivation. The Court agrees.

Nowhere in her filing has Hughes-Rodriguez denied violating the rule; rather, the thrust of Hughes-Rodriguez "evidence" is her subjective belief that her discipline and termination was a "ruse for retaliation against her for having taken FMLA back to back to care of her ailing father and her daughter …." (ECF No. 66 at 3).[6] However, Hughes-Rodriguez's subjective belief, without other evidence giving life to the belief, is simply not enough to defeat summary judgment. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (inferences supported only by speculation or conjecture will not defeat a summary judgment motion); *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted) ("The opposing party cannot meet [her] burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."). Simply put, Hughes-Rodriguez has not met her burden of demonstrating a genuine issue of material fact that her discipline and termination had some, or *any*, connection to her either taking or requesting to take FMLA leave; rather, all the evidence points to her own workplace misconduct as the reason for her termination. Caravan's Motion for Summary Judgment on the FMLA retaliation claim is GRANTED.

### C. Wrongful Discharge

---

[6] Hughes-Rodriguez also asserts that her discipline and termination was retaliation for reporting a supervisor for sending a wholly inappropriate 'Penis Pic' in the past…" (ECF No. 66 at 3). This latter allegation has not been previously asserted by Hughes-Rodriguez and she provides no evidentiary support, not even her own sworn testimony, that she reported a supervisor for sending her a "Penis Pic," or when such a report may have been made. She has asserted no separate claim related to this evidence nor has Hughes-Rodriguez set forth any facts that would connect causally her alleged report with her FMLA retaliation claim. As such, the Court concludes that this assertion is borne out of pure speculation and not evidence upon which the Court can rely.

Finally, Hughes-Rodriguez asserts a state law claim for wrongful discharge. The parameters of her claim are unclear and the precise theory under which she is proceeding on this claim is not at all lucid to the Court. To the extent she is contending that she was fired for exercising a statutorily conferred right, i.e. her rights under the FMLA, for the reasons previously stated, she has not demonstrated an issue of fact and summary judgment is appropriate.

However, to the extent she bases her claim on a violation of the CBA, section 301 "creates a federal remedy for the breach of a [CBA]. The remedy is exclusive; no action to enforce such an agreement may be based on state law." *National Metalcrafters v. McNeil,* 784 F.2d 817, 823 (7th Cir.1986). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 410 n. 10 (1988) "A claim is pre-empted if resolution of a claim requires interpretation of a CBA and not simply reference to it." *In re Bentz Metal Products Company, Inc.,* 253 F.3d 283, 289 (7th Cir.2001) (en banc).

Caravan does not expressly mention preemption in its motion for summary judgment. However, the analysis it asks the court to employ, whether it terminated Hughes-Rodriguez with good cause, would require the court to interpret the terms of the CBA. The incident sparking Hughes-Rodriguez's termination arises from Caravan's interpretation of the applicable shop rules and its interpretation of the discipline policy in the CBA. The processes and provisions of the CBA are directly implicated. Thus, Hughes-Rodriguez's claim must be resolved through §301 of the LMRA, not under state law. Accordingly, the Court concludes Highes-Rodriguez's state law claim for wrongful discharge is preempted by §301 of the LMRA.  Summary judgment is GRANTED.

## CONCLUSION

Based on the foregoing, Caravan's Motion for Summary Judgment, ECF No. 58, is GRANTED. The Clerk is directed to enter final judgment in favor of all Defendants and against Plaintiff.

SO ORDERED on April 20, 2021.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
